Davor Rukavina, Esq.
Texas Bar No. 24030781
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>THE BOMB FACTORY, LP,<br><br>   Debtor. | § § § § § § § |
| | Case No. 22-30841-swe-7<br><br>(Chapter 7) |

| | |
|---|---|
| SCOTT M. SEIDEL, TRUSTEE,<br><br>   Plaintiff,<br><br>v.<br><br>WHITNEY BARLOW; CLINTEN BARLOW; and THE BOMB FACTORY, LLC,<br><br>   Defendants. | § § § § § § § § § § § § § § § |
| | ADVERSARY PROCEEDING NO: |

## TRUSTEE'S ORIGINAL COMPLAINT

TO THE HONORABLE SCOTT W. EVERETT, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, Trustee (the "Trustee"), the trustee of The Bomb Factory, LP (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), and files this *Original Complaint* (the "Complaint"), complaining of Whitney Barlow, Clinten Barlow, and The Bomb Factory, LLC (collectively, the "Defendants"), respectfully stating as follows:

TRUSTEE'S ORIGINAL COMPLAINT—Page 1

## I. PROCEDURAL BACKGROUND

1. On May 9, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

2. The Court entered an order for relief against the Debtor on June 21, 2022.

3. The Trustee is the duly appointed trustee of the Debtor and the Estate.

4. The Court has jurisdiction over this Complaint under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2). To the extent that any matter in this Adversary Proceeding is not core, the Trustee consents to this Court's entry of a final judgment over any and all such matters.

5. Venue of this Adversary Proceeding before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II. PARTIES

6. The Trustee is the Chapter 7 trustee of the Debtor and the Estate and files this Complaint in such capacity only.

7. Whitney Barlow is a resident of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), she may be served with process in this Adversary Proceeding anywhere that she may be found, including at her home: Whitney Barlow, 8110 Willow Lane, Terrell, Texas 75160, and/or Whitney Barlow, 3039 Sharpview Lane, Dallas, Texas 75228.

8. Clinten Barlow is a resident of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), he may be served with process in this Adversary Proceeding anywhere that he may be found, including at his home: Clinten Barlow, 11330 Valley Dale Drive, Dallas, Texas 75230.

9. The Bomb Factory, LLC ("Bomb GP"), is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), it may be served with process in this Adversary Proceeding by and through its registered agent, Whitney Barlow, as follows: The Bomb Factory, LLC, c/o Whitney Barlow, Registered Agent, 1535 Stemmons Avenue, Dallas, Texas 75208.

### III. FACTS

**A. THE DEBTOR**

10. At all times material hereto, the Debtor was a Texas limited partnership, organized pursuant to that certain *Agreement of Limited Partnership* dated August 19, 2014 (the "Partnership Agreement").

11. The Debtor's business was operating a live-music and entertainment venue called "The Bomb Factory" in Deep Ellum Dallas. The Debtor leased the facilities but otherwise owned its own revenue, various items of personal property, and its goodwill. The key for the Debtor's business was to ensure that promoters of music and entertainment, or private party groups, would use the Debtor's facilities for their events.

12. Prior to June 19, 2021, and at all times material hereto, the sole general partner of the Debtor was Bomb GP, which owned a 1% general partnership interest in the Debtor.

13. In turn, Bomb GP was equally owned 50-50 by Whitney Barlow and Clinten Barlow and was solely controlled by the same.

14. Additionally, each of Whitney Barlow and Clinten Barlow owned a 14.5% limited partnership interest in the Debtor.

15. Finally, Westdale Properties America I, Ltd. ("Westdale") owned the remaining 70% limited partnership interest in the Debtor.

16. According to the Partnership Agreement, Westdale's initial capital contribution was $4,000,000.00, while the initial capital contribution of each of Bomb GP, Whitney Barlow, and Clinten Barlow was "time, talent, and labor."

17. Clinten Barlow and, to an extent, Whitney Barlow, were well known in the Dallas entertainment industry, especially in Deep Ellum, and have been credited with doing a lot to rebuild Deep Ellum's reputation and to make it a center of live music as it used to be—before they lost credibility, that is, due to their personal problems and the way they mismanaged the Debtor, as discussed below. However, until approximately 2019, their reputations and hard work did much to ensure the Debtor's success; hence the reference to "time, talent, and labor" in the Partnership Agreement.

18. On or about June 19, 2021, Westdale, pursuant to the Partnership Agreement, removed Bomb GP as the general partner of the Debtor and designated Westdale Bomb Factory 2021 GP, Inc. as the new, sole general partner. The Defendants disputed the appropriateness of this removal and replacement of the general partner. The Trustee does not seek to litigate this issue in the context of this Complaint, at this time, as it is not necessary to any fact or claim raised herein.

B. **BREACHES OF FIDUCIARY DUTY**

19. At all times material hereto, Bomb GP was the sole general partner of the Debtor. As such, it owed the Debtor various duties as specified in the Partnership Agreement and as specified by Texas law.

20. Under Section 4.06 of the Partnership Agreement, Bomb GP was required to conduct the business of the Debtor in a good and businesslike manner, consistent with its obligations under the Partnership Agreement, and consistent with industry customs and practices. Under Section 4.09 of the Partnership Agreement, Bomb GP had the duty to perform its duties

with ordinary prudence and in a manner reasonable under the circumstances. Under Section 4.10 of the Partnership Agreement, Bomb GP was required to act in good faith and in the best interests of the Debtor. Section 4.03(e) of the Partnership Agreement prohibited Bomb GP from taking certain actions on behalf of the Debtor, including authorizing any act that would make it impossible to carry on the ordinary business of the Debtor.

21. Under Texas law, both Bomb GP and Whitney and Clinten Barlow, as the managers/officers of Bomb GP, owed fiduciary duties to the Debtor. These duties included: to conduct the Debtor's business with the care that an ordinarily prudent businessperson would exercise under the circumstances; to account for and hold for the Debtor any property, profits, or benefits derived in the conduct of the Debtor's business, and account for their use of the Debtor's property; and to discharge their duties to the Debtor in good faith and in a manner reasonably believed to be in the best interests of the Debtor.

22. The Defendants breached these duties. As backdrop, during the events complained of herein, Whitney and Clinten Barlow were going through a divorce which, upon information and belief, was a hostile divorce that spilled over into their professional roles and responsibilities. Furthermore, in 2019, both were opening or operating other businesses, including restaurants, that diverted significant amounts of their time. Furthermore, both were in need of money to pay for personal liabilities, which influenced, if not determined, certain of their actions or inactions on behalf of the Debtor.

23. In this context, it is also to significant that Whitney and Clinten Barlow were not just there to manage Bomb GP and the Debtor as businesspeople or managers, but due to their unique reputations in the industry, as reflected by their initial capital contributions of "time, talent, and labor." When their reputations suffered due to their personal and other issues and problems, so did the business of the Debtor.

24. Among other actions of mismanagement and breaches of fiduciary duty, and upon information and belief:

(i) the Defendants failed to cause the Debtor to pay its sales taxes between 2014 and 2017, causing the Debtor to need to borrow funds from Westdale (or any affiliate) to pay the same, which placed a large liability that needed to be serviced on the Debtor;

(ii) the personal hostility of the Barlows, as they were going through their divorce, spilled into the workplace, with their attention not properly on managing the Debtor, and with several key employees leaving because Clinten Barlow verbally threatened them and had been physically abusive, as alleged by Whitney Barlow herself;

(iii) the same pattern led to a loss of bookings, clients, credibility, and revenue, including from Clinten Barlow insulting a representative of AEG and a representative of ScoreMore, both important clients of the Debtor, as alleged by Whitney Barlow herself;

(iv) Clinten Barlow gave inappropriate discounts to his friends and associates for his personal benefit and not that of the Debtor, including a payment for alleged "commissions" to his friend of $25,000;

(v) the Defendants caused the Debtor to stop paying rent to its landlord, despite securing a $440,000, which could have been used for rent, and which defaults caused the Debtor's landlord to terminate the Debtor's lease for its premises;

(vi) using, instead of refunding or returning, approximately $450,000 of customer prepayments and deposits for other expenses, which had the effect of increasing the Debtor's liabilities and decreasing its credibility or its clients' willingness to transact business with it; and

(vi) failing to implement internal procedures and safeguards over funds and assets, which enabled Clinten Barlow to give discounts and cash to his friends for personal benefit

and at the expense of the Debtor, and which enabled Whitney Barlow to embezzle the BOT Transfers and WF Transfers discussed below.

25. Thus, the financial problems with the Debtor commenced in 2019 and, by the middle of 2019, the Debtor's revenue was down substantially from what it had been and what it should have been, but for the Defendants' mismanagement and breaches of fiduciary duty.

26. Indeed, Westdale filed a petition in Texas State Court against the Defendants prior to the Petition Date raising many of the same breaches and damages, and which caused Westdale to remove Bomb GP as the general partner of the Debtor.

27. Additionally, in February, 2020, the Defendants caused the Debtor to make a distribution of $330,000.00 to the Debtor's partners (the "Distribution"). Upon information and belief, this was motivated by Whitney Barlow's and Clinten Barlow's desires and need for cash to pay personal expenses. Westdale, being informed of this intention, cautioned against the distribution due to cash flow needs and liabilities. By that time, the Debtor's revenue had dropped considerably due to the Defendants' mismanagement, the Debtor had large liabilities, and the Debtor was insolvent. Yet the Defendants pushed through this distribution with serious consequences to cash flow, capitalization, and the Debtor's ability to weather the coming Covid-19 storm. While Covid-19 was not then raging in the United States, it had started spreading across the globe and had reached the United States, and a reasonably prudent manager of an entertainment venue would reasonably foresee the need to preserve cash and not make an equity distribution. Yet the Defendants caused the distribution for their personal benefit and at the expense of the Debtor.

C. **TRANSFERS TO WHITNEY BARLOW**

28. On or about June 14, 2021, Whitney Barlow opened up a bank account, in the name of the Debtor, at the Bank of Texas, Account Number ending in 1202 (the "BOT Account").

29. Upon information and belief, Whitney Barlow was the sole authorized signatory for the BOT Account.

30. At all times material hereto, the BOT Account and the funds therein were property of the Debtor.

31. On June 17, 2021, Whitney Barlow caused a check for $3,651.00 payable to the Debtor and for an insurance refund belonging to the Debtor to be deposited into the BOT Account.

32. On October 1, 2021, Whitney Barlow caused a check for $33,232.03 payable to the Debtor and for an insurance refund belonging to the Debtor to be deposited into the BOT Account.

33. The fact of the BOT Account, the funds therein, and the use of those funds were concealed by Whitney Barlow from the Debtor, the other partners of the Debtor, and on the Debtor's bankruptcy schedules and statements.

34. By December 7, 2021, upon information and belief, Whitney Barlow had transferred substantially all of the funds in the BOT Account to herself or for her benefit, including: (i) a cash withdrawal of $3,000.00 on July 19, 2021; (ii) a cash withdrawal of $16,000.00 on October 8, 2021, half of which appears to be have been used to purchase a cashier's check made out to Whitney Barlow; (iii) a cash withdrawal of $9,700.00 on November 9, 202; and (iv) a cash withdrawal of $3,500.00 on December 7, 2021 (collectively, the "BOT Transfers").

35. Upon information and belief, none of the BOT Transfers were used to benefit the Debtor or to pay any debts of the Debtor. Rather, Whitney Barlow used the BOT Transfers for her personal benefit or her other businesses

36. At no time did the Debtor authorize Whitney Barlow's use of the BOT Funds for her personal benefit.

37. Separately, the Debtor maintained an account at Wells Fargo in its name, Account No. ending in 9692 (the "WF Account"). Whitney Barlow had access to this account and could

cause transfers to be made from the WF Account. At all times material hereto, the Debtor owned the WF Account and the funds in the WF Account.

38. Upon information and belief, Whitney Barlow caused at least the following transfers of funds of the Debtor to be made from the WF Account for her personal benefit (collectively, the "WF Transfers"):

| Date | Amount | Purpose |
|---|---|---|
| 4/29/2021 | $643.99 | Homegoods |
| 4/29/2021 | $500.00 | PayPal |
| 4/30/2021 | $801.38 | Personal credit card |
| 3/1/2021 | $5,010.00 | Cash withdrawal |
| 1/11/2021 | $1,138.49 | Homegoods |
| 1/11/2021 | $108.23 | Homegoods |
| 6/2/2021 | $400.00 | Fitty3Concepts |
| 6/2/2021 | $1,000.00 | PayPal |
| 5/10/2021 | $571.39 | Groceries |
| 5/17/2021 | $262.68 | Lowe's |
| 5/18/2021 | $1,031.95 | Lumiere Place |
| 5/19/2021 | $1,055.99 | Lumiere Place |
| 5/21/2021 | $500.00 | Zelle |
| 5/24/2021 | $1,312.21 | Costco |
| 5/27/2021 | $750.00 | PayPal |
| Total: | $15,086.31 | |

39. Upon information and belief, one or more of the WF Transfers were made to one or more other companies, including restaurant businesses, owned by Whitney Barlow. Among other things, Whitney Barlow was asked at her deposition about some of the WT Transfers, including their business purpose, and she refused to answer. Among other things, the Trustee is not aware of any Debtor-purpose for shopping at Lowes, or through PayPal, or for groceries, and "Fitty" is known to be a separate business owned by Whitney Barlow while "Treeswhitney" (PayPal account) is known to be part of her e-mail address and/or user name.

40. Upon information and belief, none of the WF Transfers were used to benefit the Debtor or to pay any debts of the Debtor. Rather, Whitney Barlow used the WF Transfers for her personal benefit.

41. At no time did the Debtor authorize Whitney Barlow's use of the WF Funds for her personal benefit.

42. The Trustee is aware of the foregoing transfers and reserves his right to assert additional transfers as avoidable or recoverable, depending on discovery, as part of Whitney Barlow's same overall conduct and plan to use Debtor funds for her personal benefit. The Trustee further reserves the right to assert claims against other transferees of such transfers depending on discovery.

## IV.  CAUSES OF ACTION

**COUNT 1**:  **CONVERSION (WHITNEY BARLOW)**

43. The Trustee incorporates his allegations above.

44. The BOT Transfers and the WF Transfers were of funds that were property of the Debtor. The Debtor, and not Whitney Barlow, owned the funds in the BOT Account and the WF Account and was entitled to the possession and use thereof.

45. Whitney Barlow converted these funds for her personal benefit and use, in violation of her legal responsibilities to the Debtor, in violation of the Partnership Agreement, in violation of her fiduciary duties to the Debtor, and without authority or approval from the Debtor. Furthermore, she concealed the fact of the BOT Transfers and the WF Transfers from the Debtor and its other partners. In so doing, Whitney Barlow exercised unlawful dominion and control over the funds the subject of the BOT Transfers and the WF Transfers, which was inconsistent with, and prejudicial to, the Debtor's rights with respect to the same.

46. Upon information and belief, prior to the Petition Date, the Debtor and/or Westdale made a demand on Whitney Barlow for the return of these funds, which she refused to do. The Debtor was damaged as a result in the amount of the BOT Funds and the WF Funds.

47. Accordingly, the Trustee seeks a money judgment against Whitney Barlow in the amount of the BOT Transfers and the WF Transfers.

**COUNT 2 :**     **EMBEZZLEMENT (WHITNEY BARLOW)**

48. The Trustee incorporates his allegations above.

49. The funds used to make the BOT Transfers and the WF Transfers were property of the Debtor prior to Whitney Barlow causing the same to be transferred for her benefit. Whitney Barlow had access to said funds as an officer and/or manager of the Debtor's general partner. As such, the funds were entrusted to her care to be used for proper and lawful Debtor purposes, including for business operations and to pay corporate debt; not to be used by Whitney Barlow for her personal expenses or those of her other companies, or to be transferred to her or her other companies.

50. At no time did the Debtor authorize Whitney Barlow to use any of the foregoing funds for her personal benefit, or to make the BOT Transfers or the WF Transfers. At no time did the Debtor authorize or approve of the BOT Transfers or the WF Transfers, which transfers Whitney Barlow hid and concealed. The Debtor received no benefit from the BOT Transfers or the WF Transfers.

51. In transferring those funds to herself or to entities that she controlled and owned, Whitney Barlow exercised dominion and control of the Debtor's property, without its effective consent, and with the intent of depriving the Debtor of its property for Whitney Barlow's personal benefit, with Whitney Barlow illegally assuming ownership of the funds as though they were hers, for her personal benefit, and to the exclusion of any benefit to the Debtor.

52. Accordingly, the Trustee seeks a money judgment against Whitney Barlow for embezzlement of the Debtor's funds at least in the amount of the BOT Transfers and the WF Transfers.

**COUNT 3 :** **TEXAS THEFT LIABILITY ACT (WHITNEY BARLOW)**

53. The Trustee incorporates his allegations above.

54. For the same allegations and underlying causes of action as pled above in Count 1 and Count 2, and in the alternative or in the addition to the same, the Trustee seeks a money judgment against Whitney Barlow under sections 134.003 and 134.005 of the Texas Civil Practice and Remedies Code in the amount of the BOT Transfers and the WF Transfers and, additionally, a money judgment for his reasonable attorney's fees incurred herein under section 134.005(b) of the Texas Civil Practice and Remedies Code in an amount to be proven at trial.

**COUNT 4 :** **AVOIDANCE OF BOT TRANSFERS AND WF TRANSFERS**

55. The Trustee incorporates his allegations above.

56. The funds used to make the BOT Transfers and the WF Transfers constituted property of the Debtor.

57. At the time of each of the BOT Transfers and the WF Transfers, the Debtor was insolvent.

58. The Debtor received no return value, and no reasonably equivalent value, for any of the BOT Transfers or the WF Transfers, since such transfers and underlying funds were not used for the Debtor's operation expenses, or to pay the Debtor's debts, or otherwise for the Debtor's business.

59. Whitney Barlow caused the Debtor to make the BOT Transfers and the WF Transfers, which constituted in each instance transfers of property of the Debtor.

60. Accordingly, the Trustee seeks a judgment avoiding each of the BOT Transfers and the WF Transfers as constructively fraudulent transfers under section 548 of the Bankruptcy Code.

**COUNT 5 :** **RECOVERY OF AVOIDED TRANSFERS**

61. The Trustee incorporates his allegations above.

62. Each of the BOT Transfers and WF Transfers were made to Whitney Barlow or for her benefit, as the initial transferee.

63. Accordingly, the Trustee seeks a money judgment under section 550 of the Bankruptcy Code in the amount of each of the BOT Transfers and WF Transfers avoided pursuant to this Complaint.

**COUNT 6 :** **BREACHES OF DUTY (ALL DEFENDANTS)**

64. The Trustee incorporates his allegations above.

65. Each of the Defendants owed duties, contractual, statutory, and fiduciary, to the Debtor. Each of the Defendants breached these duties due to their problems and animosities, their neglect of the Debtor's business, and their taking of Debtor property and opportunities for themselves. In so doing, each of them breached the Partnership Agreement and Texas law.

66. Among other things, these breaches caused damage to the Debtor by way of: (i) unpaid taxes; (ii) unpaid prepayments and deposits, and the loss of credibility and goodwill as a result; (iii) loss of key employees, clients, and events; (iv) unpaid rents and the loss of the Debtor's lease; (v) lost property and revenue from self-dealing or for personal benefit, at the expense of the Debtor; (vi) loss of adequate capitalization, including from the Distribution; and (vii) Whitney Barlow's embezzlement of Debtor funds.

67. These damages were caused by the Barlows' inattentiveness to the Debtor's business, personal interests with respect to their divorce and their other businesses, personal need for funds, breaches of the duty of care and the duty of loyalty, and by damaging the Debtor's reputation and ability to continue as a going concern.

68. These actions, decisions, and damages predate Covid-19, with the Debtor having serious decreases in revenue, capitalization issues, and increase of debt by the middle of 2019. This was only magnified by the Covid-19 pandemic. However, upon information and belief, and

especially in light of the governmental stimulus funds that the Debtor secured, the Debtor would have been able to weather the pandemic and continue as a going concern but for these breaches and damages.

69. Therefore, the foregoing breaches of fiduciary and other duties culminated in the loss of the Debtor as a going concern, to the damage of the Debtor, which was left without revenue and value to pay its debts, as evidenced by the unpaid claims in the Bankruptcy Code.

70. Accordingly, the Trustee seeks a money judgment against the Defendants, jointly and severally, for the breaches of the Partnership Agreement, Texas statute, and their fiduciary duties, in an amount to be proven at trial.

**COUNT 7:** **CONSPIRACY (WHITNEY AND CLINTEN BARLOW)**

71. The Trustee incorporates his allegations above.

72. The Trustee asserts Count 7 in the alternative to Count 6 with respect to the joint and several liability of Whitney and Clinten Barlow for the breaches of duty and resulting damages of Bomb GP.

73. A civil conspiracy consists of a combination of two or more persons, seeking to accomplish a shared object or course of action, a meeting of the minds on such object or course of action, one or more unlawful, overt acts in pursuance thereof, and resulting damages.

74. Each of Whitney Barlow and Clinten Barlow knew of Bomb GP's duties that it owed to the Debtor. Each conspired with each other and with Bomb GP to cause Bomb GP to breach those duties, through their sole management and control of Bomb GP. Bomb GP did in fact breach its duties based on said conspiracy. Furthermore, as such, both Whitney Barlow and Clinten Barlow actively participated in Bomb GP's breaches of its duties.

75. Accordingly, the Trustee seeks a money judgment against Whitney Barlow and Clinten Barlow holding them jointly and severally liable for all breach of duty damages otherwise awarded against Bomb GP.

**COUNT 8 :** **OBJECTION TO CLAIM (WHITNEY BARLOW)**

76. The Trustee incorporates his allegations above.

77. By the WB Claim, Whitney Barlow claims unpaid wages from August 30, 2020 through July 3, 2022.

78. The Bankruptcy Code and the Bankruptcy Rules require that a proof of claim be supported by sufficient evidence. Here, the WB Claim is not supported by any exhibits, attachments, explanations, or evidence. Whitney Barlow makes no attempt to evidence any "right to payment" of her claimed wages.

79. Therefore, the WB Claim is not entitled to any presumption of allowance and is not allowable under section 502 of the Bankruptcy Code.

80. Furthermore, upon information and belief, Whitney Barlow had no right or claim to wages for all or some of the period claimed, and her claim is therefore unenforceable against the Debtor under section 502(b)(1) of the Bankruptcy Code.

81. Furthermore, to the extent of any judgment or avoidance or recovery under this Complaint against Whitney Barlow, to the extent that she does not pay the same, her claim is disallowable under section 502(d) of the Bankruptcy Code.

82. Accordingly, the Trustee seeks judgment disallowing the WB Claim.

**COUNT 9:** **OBJECTION TO CLAIM (CLINTEN BARLOW)**

83. The Trustee incorporates his allegations above.

84. By the CB Claim, Clinten Barlow claims unpaid wages from August 30, 2020 through July 3, 2022.

85. The Bankruptcy Code and the Bankruptcy Rules require that a proof of claim be supported by sufficient evidence. Here, the CB Claim is not supported by any exhibits, attachments, explanations, or evidence. Clinten Barlow makes no attempt to evidence any "right to payment" of his claimed wages.

86. Therefore, the CB Claim is not entitled to any presumption of allowance and is not allowable under section 502 of the Bankruptcy Code.

87. Furthermore, upon information and belief, Clinten Barlow had no right or claim to wages for all or some of the period claimed, and his claim is therefore unenforceable against the Debtor under section 502(b)(1) of the Bankruptcy Code.

88. Accordingly, the Trustee seeks judgment disallowing the CB Claim.

**COUNT 10:** **EQUITABLE SUBORDINATION OF CLAIMS AND EQUITY INTERESTS**

89. The Trustee incorporates his allegations above.

90. Under section 510(c) of the Bankruptcy Code, the Court may equitable subordinate one otherwise allowable claim to another, or one otherwise valid equity interest to another.

91. Equitable subordination is proper when the claimant or interest holder engages in inequitable conduct that results in injury to the other creditors or interest holders, or confers on the claimant or the holder an unfair advantage.

92. For the reasons stated with respect to breaches of duty and with respect to the BOT Transfer and the WF Transfer (in the case of Whitney Barlow), the Defendants' actions have harmed the other creditors of the Debtor and the Estate. Thus, to the extent that any of the Defendants is allowed a claim, the Trustee seeks the equitable subordination of such claim to the extent necessary to rectify such injury.

93. Likewise, for the reasons stated with respect to breaches of duty and with respect to the BOT Transfer and the WF Transfer (in the case of Whitney Barlow), the Defendants' actions

in their capacities as equity interest holders have harmed the other equity interest holders of the Debtor and the Estate. Thus, to the extent that any of the Defendants obtains a recovery on account of such interest, the Trustee seeks the equitable subordination of such interest to the extent necessary to rectify such injury.

**COUNT 11: CHARGING OF PARTNERSHIP INTERESTS FOR DAMAGES**

94. The Trustee incorporates his allegations above.

95. To the extent that the Court awards damages against any of the Defendants, and they fail to pay the same, the Trustee seeks equitable charging and similar equitable remedies providing for payment of any such damages against each Defendant's interests in the Debtor or, alternatively, adjusting each partner's capital account for the same and to take the same into account.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee requests that the Defendants be cited to appear and to answer this Complaint and that they have judgment as follows:

(i) avoidance of all transfers requested herein;

(ii) recovery of all transfers requested herein;

(iii) money judgments as requested herein;

(iv) disallowance of claims as requested herein;

(v) equitable subordination of claims and/or interests as requested herein;

(vi) equitable charging or adjustment of capital accounts as requested herein;

(vii) reasonable attorney's fees to the extent provided for by applicable law;

(viii) prejudgment and postjudgment interest to the extent provided by applicable law; and

(ix) such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 7th day of May, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
500 N. Akard Street, Ste. 4000
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**COUNSEL FOR SCOTT SEIDEL, CHAPTER 7 TRUSTEE**